## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

HUBBLE v. COLE.

July 26th, 1888.

Absent, *Fauntleroy, J.*

1. CONTRACTS—*Interpretation—Parol evidence.*—Only in cases of latent ambiguity will parol evidence be resorted to in aid of the interpretation of contracts, and then not to add to or diminish what is written, but to explain the subject of the instrument.

2. IDEM—*Custom and usage.*—Parol evidence of custom and usage is always admissible to discover the real meaning of the parties, but not to contradict or vary express stipulations.

3. LANDLORD AND TENANT—*Waste—Injunction—Case at bar.*—Where it appears by the terms of a lease that all of the land was rented without restrictions as to its cultivation, except that the land should be farmed in a way to prevent injury in so far as injury could reasonably be prevented ; that a certain bottom set in blue grass had been in corn twelve or fifteen times in the past thirty years ; that it was the best husbandry to plow this, as it never washed, as did other portions of the farm, but was the best for corn, and the most easily reset in grass : HELD That an injunction restraining lessee from cultivating it in corn should be dissolved.

4. IDEM—*Stables.*—Injunction restraining lessee from erecting stable without the lessor's consent: HELD, To have been properly dissolved, it being provided that stable be removed at end of lease should lessor so insist.

Appeal from decree of circuit court of Smythe county, rendered July 12th, 1886, in an injunction cause wherein Martha A. E. Cole was complainant, and George. W. Hubble was defendant. The decree being adverse to the defendant, he obtained

an appeal and *supersedeas* from one of the judges of this court. Opinion states the case.

*F. S. Blair,* for the appellant.

*N. C. St. John,* and *J. H. Gilmore,* for the appellee.

LACY, J., delivered the opinion of the court.

On the 28th day of November, 1883, the appellee, Martha A. E. Cole, filed her bill against the appellant, George W. Hubble, who was her tenant, to restrain him in the commission of waste, in erecting a stable on the land, and in plowing up eighty or ninety acres of river bottom of the very best quality, and which is claimed to be finely set in blue-grass, which she alleged was a fine sod, equal perhaps to any in southwest Virginia; that it had reached that standard, and is in that condition, that approved farming, or a proper care of and the preservation of lands from injury, would require the same to be mowed or grazed, and not cultivated for grain crops; that the said George W. Hubble, not regarding his covenant with her, had rented this eighty or ninety acres to a sub-tenant, to cultivate in corn two years, and the third year in wheat, which, if carried out, would irreparably injure, not only said lands, but the farm as a whole; that this land lies immediately on the middle fork of Holston river, and, in times of high water, is subject to overflow, and, if plowed three years in succession, in all probability would be injured by floods and water beyond estimate and beyond reparation. The defendant, Hubble, demurred, and answered that he had the right, under his lease, to do all that he had undertaken to do. As to the stable, it was necessary in order to enjoy the advantages of his lease; one of the stables being unsafe, and falling in ruins, while the other was so situated as not to be useful and sufficient. That, as to the land, five sixths of it was cleared, but much of it was hilly and liable

to wash when cultivated, and that the land he was denied the right to plow was bottom land, suitable for growing corn— indeed, the very best on the place ; that, in the life-time of the plaintiff's husband, D. J. Cole, during the twelve or fourteen years while he owned and lived upon this farm, this bottom, or parts of it, had corn grown on it often, as many as seven times ; that while it was easy to cultivate, and the best corn land on the place, it was less liable to wash than any other ; that, while the uplands did wash from the effects of rains, this never did, and that it was so situated that a rise in the river only covered it with water, without washing it; that the former owner, Colonel Beattie, who had sold it to Cole, cultivated it in corn and other grain in succession for twenty-five or thirty years prior to the ownership of Cole, and this without injury ; that the whole of this land was not set in blue-grass, only a small portion of it ; that some of it was timothy and clover, and other grasses, and the proper time had come to break this sod and cultivate corn; that there was no restriction on him in the lease which prevented him from cultivating this land ; and moved the court to dissolve the injunction. The testimony was taken on both sides by depositions, and upon the hearing the circuit court dissolved the injunction as to the stable, decreeing that it should be removed at the end of the term, and dissolved the said injunction also as to certain portions of this bottom land, but perpetuated it as to "forty-five or fifty acres" of the same. Whereupon the defendant, Hubble, appealed to this court.

The contract between the parties is filed in the cause, and from that it appears that the plaintiff, Cole, had rented to the defendant, Hubble, all the real estate of which D. J. Cole died seized, for the term of five years, with the exception of two rooms reserved in the mansion-house, and the said Hubble was to pay her an agreed price, and provide her with a horse for her own use when desired ; to furnish her and her friends board at an agreed price, she to invite and entertain as though the place was not rented out. Hubble agreed " that the land rented

should be farmed in a way to prevent injury to the same, in so far as injury could be reasonably prevented;" to keep up the fences—it being the intention of both parties that the land and fences should be in as good condition at the expiration of the said term of years as they were at that time. It will be observed that, by the terms of this lease, all the land of the plaintiff is leased to the defendant. He is not restricted in the cultivation of any of it in express terms. But it is insisted that by the agreement, " that the lands shall be farmed in a way to prevent injury to the same, in so far as injury can reasonably be prevented," the lessee is debarred the cultivation of the piece in question, because it will injure it to plow it; and that he has enough land to plow without this, it being necessary to keep some of the land in grass for the support of the stock—the system employed being, according to the custom of the neighborhood, a mixed one of farming, and grazing cattle combined.

The question to be decided between the lessor and the lessee in this case is as to the true interpretation of the limitation agreed on between them, and expressed in their written agreement, " the lands hereby rented shall be farmed in a way to prevent injury to the same, in so far as injury can reasonably be prevented." For this interpretation we must look first to the terms used, and, if these be unambiguous, the language of the instrument will be followed; for when parties have deliberately put their engagements into writing, in such terms as impart a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of previous conversations, or declarations at the time when it was completed, or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice possibly of one of the parties, is rejected; that is, parol contemporaneous evidence is inadmissible to contradict or

vary the terms of a valid written instrument. But the writing may be read by the light of surrounding circumstances, in order to more perfectly understand the intent and meaning of the parties; not to add words to the instrument, but to ascertain the meaning of the words used, when these are used in their plain, ordinary, and popular sense. As it is a leading rule, in regard to written instruments, that they are to be interpreted according to their subject-matter, it is obvious that parol or verbal testimony must be resorted to, in order to ascertain the nature and qualities of the subject to which the instrument refers, for these are not to be found in the instrument. Evidence which is calculated to explain the subject of an instrument is essentially different in its character from evidence of verbal communications respecting it. Whatever, therefore, indicates the nature of the subject is a just medium of interpretation of the language and meaning of the parties in relation to it. If the language used appears to be ambiguous upon the face of the deed, it is not to be helped by averment. But when the contract upon its face appears certain, and without ambiguity, for anything that appears upon the instrument, but there is some collateral matter out of the deed that breedeth the ambiguity, then, as Lord Bacon says, it shall be holpen by averment. And so customary rights and incidents, universally attaching to the subject-matter of the contract in the place and neighborhood where the contract was made, are impliedly annexed to the written language and terms of the contract, unless the custom is particularly and expressly excluded. Parol evidence of custom and usage, consequently, is always admissible to enable us to arrive at the real meaning of the parties, who are naturally presumed to have contracted in conformity with the known and established usage; which, however, is not permitted to contradict or vary express stipulations. And a usage of trade can never be set up in contravention of a rule of law, or in opposition to a plain and clearly expressed intention.

That the words we have recited in the lease in question have

any technical meaning is not pretended. The covenant is, to farm without unnecessary injury to the land; that is, to farm it in a husbandlike manner. Whether it is an.act of good husbandry to plow up the land which is the subject of this dispute or not, cannot be determined by an inspection of the contract, and resort must be had to the custom among farmers in the neighborhood, and the character of the land itself, the subject of the contract. And both sides, recognizing this necessity, have had resort to numerous witnesses. The plaintiff has introduced a large number of farmers who assert that it would be bad husbandry to plow up this land, and that it would greatly injure the farm, as this is very valuable blue-grass sod. While, on the other hand, the defendant proves that the land in question was the best corn land on the premises, and less liable to wash than the rolling uplands.; that it had been in corn twelve or fifteen times in the last thirty years ; that it never washed, but improved, by any overflow from the river; that the former owner, Beattie, for many years in succession, and Cole, plaintiff's deceased husband, for years, cultivated this very land in corn, and that so far from being an irreparable injury to plow the land, that it was very easily reset in grass, as past experiments with it showed, and that there was still a very large per centum of the arable land besides this in unbroken sod. And when this evidence is considered, together with the contract which rents the farm without any special restriction as to this or any other piece of land, we cannot see any reason why it would be bad husbandry to plow up this piece of ground because it was sod land, any more than any other piece of sod land ; and as it clearly appears from the evidence that it was not only the best piece of corn land on the place, but of all the fields the most easily reset in grass, after tillage, it appears to be the best husbandry to plow this, and leave the sod on land liable to wash when broken up, and difficult to reset in sod. As the custom of the country is to plow up the sod land alternately, and cultivate in corn, and all the grass fields on this place had been

from time to time so used, it would not be presumed that the parties to this contract intended to except any one or more of such fields from their contract, unless they so stated in that instrument.

When the plaintiff was about to rent her farm out to be farmed, if she wished to exempt or reserve any, or specially stipulate any thing concerning this or any other field, it would have been an act of simple justice to her lessee to have given notice of this intention, by inserting the same in the lease ; but instead of that, when she was stipulating for the price to be paid, she declared that she was renting all the real estate to be farmed. Her lessee was her nephew, and knew that there was no ancient meadow on this farm which had never been plowed, and, on the contrary, knew that all the fields had been plowed in rotation, according to circumstances and the judgment of the farmer. It is, therefore, more fanciful than just to say that although the farm was rented without restriction upon one field more than another, that nevertheless this field is too good to be plowed up—too good in the estimation of witnesses. But to whose judgment was this question alone referable under an unrestricted lease ? To that of the lessee. It is unreasonable to rent him the property for a valuable consideration, and yet subject him to pupilage as to what fields he should plow and what he should sow. There was a time when all this might have been done if he so agreed, and that was when the contract was entered into, and before any rights had been acquired under it. We think the circuit court erred in perpetuating the injunction as to this land, and for that cause the same will be reversed.

The order dissolving the injunction as to the erection of the stable is not erroneous ; the said order having provided that the stable erected by the tenant should be removed by him at the expiration of his lease, the plaintiff so insisting, and it having been erected without her consent. There is no waste committed if the same is removed at the expiration of the lease.

To this part of the decree the appellant does not except, and the error assigned by the appellee on this ground is overruled for the reason stated.

We are of opinion to reverse the circuit court of Smythe county, and dissolve the injunction, and dismiss the bill of the plaintiff, with costs, to which end a decree will be rendered here.

HINTON, J., dissented.

DECREE REVERSED IN PART AND AFFIRMED IN PART.